UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROL RODGERS, ) | |
| ) | |
|     Plaintiff, ) | Case No. 07 cv 6262 |
| ) | |
| v. ) | Judge Milton Shadur |
| ) | Mag. Judge Michael Mason |
| McDONALD'S CORPORATION, ) | |
| ) | Jury Trial Demanded |
|     Defendant. ) | |

**McDONALD'S CORPORATION'S ANSWER TO PLAINTIFF'S COMPLAINT**

**JURISDICTION AND VENUE**

**1.** This is a civil action seeking monetary damages and affirmative relief based upon the Defendant's violation of Title VII of the Civil Rights Act of 1964, as amended by inter alia, the Civil Rights Act of 1991, for the Defendant's retaliation against Plaintiff for Plaintiff's complaints of race discrimination and her asserting her rights under Title VII.

**ANSWER NO. 1:** Defendant admits the allegations as stated in this Paragraph of the Complaint.

**2.** Jurisdiction of this Court over this controversy is invoked under 28 U.S.C. Section 1331 and 28 U.S.C. Sections 1343 (3) and (4).

**ANSWER NO. 2:** Defendant admits the allegations as stated in this Paragraph of the Complaint.

**3.** Venue is proper pursuant to 28 U.S.C. Section 1391.

**ANSWER NO. 3:** Defendant admits the allegations as stated in this Paragraph of the Complaint.

**4.** All conditions precedent to commencing this action have been satisfied in that: a. Plaintiff has filed charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about August 16, 2006 (21-BA-62419 and 21-BA-62421); b.  the EEOC has

issued a Right to Sue Letter, dated August 10, 2007; and c.  less than ninety (90) days have elapsed since Plaintiff received the Right-to-Sue Letter and filed this Complaint.

**ANSWER NO. 4:**   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated with respect to Charge No. 21-BA-62419 and therefore denies them.  Defendant admits the remaining allegations as stated in this Paragraph.

## PARTIES

5. Plaintiff, at all times hereinafter mentioned was and still is a resident and domiciliary of the County of DuPage, State of Illinois, specifically residing at 1728 Brookdale Road, Naperville, Illinois  60563.

**ANSWER NO. 5:**   Defendant admits the allegations as stated in this Paragraph of the Complaint.

6. Upon information and belief, Defendant McDonald's Corporation is a corporation doing business in the state of Illinois, and is engaged in an industry affecting commerce.  Defendant has employed twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.  Defendant is an "employer" within the meaning of Title VII.  Defendant's principle place of business is located in the County of DuPage at 2915 Jorie Blvd., Oak Brook, Illinois  60523.

**ANSWER NO. 6:**   Defendant admits the allegations as stated in this Paragraph of the Complaint.

## BACKGROUND

7. Plaintiff's race is Black.

**ANSWER NO. 7:**   Defendant admits the allegation as stated in this Paragraph.

8. Plaintiff worked at Defendant, McDonald's Corporation ("McDonald's Corp."), for almost five (5) years in the position of Administrative Coordinator:  from November, 2001 to February, 2004 as a temp; and from March 1, 2004 to August 8, 2006.  At the time McDonald's Corp. terminated Plaintiff's employment Plaintiff held the position of Administrative Coordinator.

**ANSWER NO. 8:**   Defendant denies the allegations as stated in this Paragraph. Answering further, Defendant states that Plaintiff worked at McDonald's Corp. as a temporary employee prior to becoming employed by the company on March 1, 2004.  Defendant is without knowledge or sufficient information to form a belief as to the truth of the allegations contained in this Paragraph concerning the position Plaintiff held while she was employed by the temporary agency, and therefore denies them.  Defendant further states that Plaintiff held the title Administrative Assistant during her employment with McDonald's, which was from March 1, 2004 to August 8, 2006.

9. On Thursday August 3, 2006 Plaintiff complained of race discrimination in connection with having been passed over for advancement opportunities.  Three (3) workdays later, on Tuesday August 8, 2006, Defendant suddenly terminated Plaintiff's employment.  This is discussed in greater detail below.

**ANSWER NO. 9:**   Defendant denies the allegation as stated in this Paragraph.

10. During Plaintiff's employment with McDonald's Corp. Plaintiff had good to excellent work performance, with Plaintiff being a hard worker who was well-liked by her co-workers as well as her superiors (including also by Kenneth Barun, the President of McDonald's Corp.), and also in this regards:

    a.    in or about late January, 2006 Defendant had conducted a round-table evaluation, as a result of which Plaintiff received the highest raise and highest bonus amongst the 3 administrative staff in her department;

    b.    in or about January, 2006 Plaintiff was rated a "significant contributor";

    c.    in or about March, 2006 Plaintiff received a 5% raise and 100% of Plaintiff's target bonus; and

    d.    on or about June 27, 2006 – 1-½ months before Plaintiff's employment was terminated – Defendant issued Plaintiff a favorable mid-year performance review.

**ANSWER NO. 10:**   Defendant denies that Plaintiff exhibited good to excellent work performance at all times during the period of her employment with Defendant.  Defendant

further denies that Plaintiff was a hard worker and that Plaintiff was well-liked by her co-workers and superiors, including Kenneth Barun.

      a.      Defendant admits that it conducted a round-table evaluation on January 18, 2006. Defendant denies the remaining allegations as stated in this Paragraph 10a. of the Complaint.

      b.      Defendant denies the allegations as stated in Paragraph 10b. Defendant admits that Plaintiff received an overall performance level rating of "3. Significant Performance" in her Individual Performance Plan and Year End Assessment for the year ending 2005. Defendant further states that Plaintiff received her performance review in or around March 2006.

      c.      Defendant admits that Plaintiff received a 5% raise in or about March 2006. Defendant denies the remaining allegations as stated in this Paragraph 10c. of the Complaint.

      d.      Defendant denies the allegations as stated in this Paragraph 10d. of the Complaint. Answering further, Defendant states that Plaintiff's mid-year performance review addressed numerous areas in which Plaintiff's performance needed improvement.

**11.** In or about February, 2006 Plaintiff informed Janet Burton (Senior Director, and Plaintiff's Supervisor), that Plaintiff was interested in advancement, and specifically that Plaintiff was interested in the available Field Relations Manager Position, that was vacant. Ms. Burton (white) advised Plaintiff that she would not consider Plaintiff for that position, allegedly because she wanted someone who could hit the ground running.

      **ANSWER NO. 11:** Defendant denies the allegations as stated in this Paragraph of the Complaint.

**12.** On or about March 28, 2006 Plaintiff again advised Ms. Burton that she wanted to seek advancement opportunities. Plaintiff did this because Defendant's rules required that Plaintiff notify Plaintiff's supervisor of this before Plaintiff was to be interviewed for a posted position.

      **ANSWER NO. 12:** Defendant admits the allegations as stated in this Paragraph of the Complaint.

      **13.** From in or about February, 2006 Ms. Burton:

      a.      treated Plaintiff with hostility and made Plaintiff feel ostracized by Plaintiff's team;

      b.    gave Plaintiff extra work and work of the other administrative coordinators, and of managers towards attempting to overwhelm Plaintiff so that Plaintiff could fail;

      c.    withheld Plaintiff's evaluation past the due date, with her negatively changing the verbiage;

      d.    from March, 2006 excluded Plaintiff from staff meetings; and

      e.    gave Plaintiff menial tasks to do, with Plaintiff not being allowed to take the lead in Plaintiff's job, and with Plaintiff being treated like Plaintiff was not intelligent.

**ANSWER NO. 13:** Defendant denies the allegations as stated in this Paragraph, including sub parts.

14. On or about June 7, 2006 Plaintiff applied for the Administrative Coordinator position that was available at Defendant's Memphis, TN location. Buffy Bye (white), Administrative Manager, advised Plaintiff that Plaintiff was the only internal applicant, and that she was very interested in interviewing Plaintiff for the position. Ms. Bye interviewed Plaintiff via telephone and advised Plaintiff that she was going to check Plaintiff's references and get back to Plaintiff.

**ANSWER NO. 14:** Defendant admits that Plaintiff applied for the position alleged and that Ms. Bye (white) interviewed Plaintiff for such position via telephone. Defendant denies the remaining allegations as stated in this Paragraph of the Complaint.

15. On or about June 28, 2006 Ms. Bye informed Plaintiff that Plaintiff was not chosen for the Administrative Coordinator position in Memphis, TN. During Plaintiff's employment it was Plaintiff's belief that Defendant had hired a non-black, less qualified, applicant for this position.

**ANSWER NO. 15:** Defendant admits that, on or about June 28, 2006, Ms. Bye informed Plaintiff that she was not chosen for the Administrative Coordinator position in Memphis, TN. Defendant denies that it hired a non-black, less qualified applicant for the position. Defendant is without knowledge or sufficient information to form a belief as to the truth of the remaining allegations contained in this Paragraph and therefore denies them.

**16.** On or about June 27, 2006 Plaintiff applied for the Regional Administrative Manager position that was available at Defendant's Raleigh, NC location. On July 12, 2007 Plaintiff interviewed with Kenneth Ricker (white, Defendant's Human Resource Manager, East Division), Marty Rantt (white, General Manager), and Julie Beichler (white, outgoing Administrative Manager).

**ANSWER NO. 16:** Defendant admits that Plaintiff applied for the Regional Administrative Manager position that was available at Defendant's Raleigh, NC location, and that in July, 2007 Plaintiff interviewed with Kenneth Ricker (white) and Marty Rantt (white) for the position. Defendant denies the remaining allegations as stated in this Paragraph.

**17.** On or about July 7, 2006 Defendant interviewed Plaintiff in North Carolina. On or about July 23, 2006 Defendant advised Plaintiff that Defendant had not selected Plaintiff and had instead selected someone else. Defendant promoted an internal candidate, who was non-black and less qualified than Plaintiff for the position.

**ANSWER NO. 17:** Defendant denies that the candidate selected for the North Carolina Regional Administrative Manager position was less qualified for the position than Plaintiff. Defendant admits the remaining allegations as stated in this Paragraph of the Complaint.

**18.** On August 2, 2006 Plaintiff sent an e-mail to Janet Burton (Senior Director), Marty Coyne (Vice-President) and Angelique Kelly-Lara (HR Director) requesting a meeting to discuss why Plaintiff was not receiving any of the advancement opportunity positions Plaintiff had applied for. Later that day the requested meeting was scheduled for Friday August 4th at 9:30 a.m.

**ANSWER NO. 18:** Defendant denies that a meeting was scheduled for Friday, August 4th at 9:30 a.m. Answering further, Defendant states that Plaintiff proposed scheduling a meeting at the alleged date and time, however, the requested participants were unavailable. Defendant is without knowledge or sufficient information to form a belief as to the truth of the allegations contained in this Paragraph concerning what Plaintiff intended to discuss at this meeting and therefore denies them. Defendant admits the remaining allegations as stated in this Paragraph of the Complaint.

**19.** On August 3, 2006, Plaintiff engaged in a protected activity when Plaintiff complained to Pat Harris, Chief Diversity Officer, that Plaintiff was being held back from promotions because of Plaintiff's race, black. As Plaintiff and Ms. Harris finished the meeting Ms. Harris told Plaintiff that she was going to speak with HR Director Kelly-Lara right away about this, and Plaintiff then saw Ms. Harris walk in the direction of the HR Department.

**ANSWER NO. 19:** Defendant denies the allegations as stated in this paragraph of the Complaint.

**20.** Later that day, on August 3, 2006, Marty Coyne came to Plaintiff's desk and asked to speak with Plaintiff. Mr. Coyne and Plaintiff went into an empty conference room and Mr. Coyne stated that he had received Plaintiff's August 2nd e-mail requesting a meeting, and that the meeting had been rescheduled from the morning of Friday (August 4th) to the following Tuesday (August 8th) at 4:00 p.m. He also made a statement that led Plaintiff to conclude that he was aware of Plaintiff's aforesaid August 3rd conversation with Ms. Harris.

**ANSWER NO. 20:** Defendant denies the allegations as stated in this Paragraph of the Complaint.

**21.** On August 8, 2006 Janet Burton came to Plaintiff's desk around 2:00 p.m. and requested that Plaintiff meet early with the group. Plaintiff responded sure, and Ms. Burton and Plaintiff walked together to the conference room. Angelique Kelly-Lara was waiting in the room to meet with Ms. Burton and Plaintiff, but Marty Coyne was not. When Plaintiff sat down Ms. Burton stated to Plaintiff that she knew Plaintiff was expecting a different meeting, but they wanted to meet with Plaintiff regarding Plaintiff's performance instead. Ms. Burton then advised Plaintiff that they were placing Plaintiff on a performance improvement plan ("PIP"), and she started to read the contents of the plan (which document was irregular). During this meeting Plaintiff stated that what Ms. Burton was saying as to Plaintiff's performance was not true, and Plaintiff advised that Plaintiff would not sign the PIP. Ms. Burton then responded that Plaintiff was terminated, and that Plaintiff should go clean out Plaintiff's desk. Ms. Burton then noted on the PIP that Plaintiff has refused to sign it.

**ANSWER NO. 21:** Defendant denies that the Performance Improvement Plan provided to Plaintiff on August 8, 2006 was irregular. Defendant also denies that Ms. Burton told Plaintiff that her employment with the Company was terminated or that Plaintiff should clean out her desk. Defendant admits the remaining allegations as stated in this paragraph of the Complaint.

**22.** Defendant had not issued Plaintiff any written warnings in the period April, 2005 to August 7, 2006.

**ANSWER NO. 22:** Defendant denies the allegations as stated in this paragraph of the Complaint.

23. The Defendant's issuance to Plaintiff of the PIP, as well as the timing of the Defendant's issuance of the PIP, was unwarranted and was retaliatory against Plaintiff for Plaintiff's aforesaid protected activity of complaining of race discrimination. But for such retaliatory action by the Defendant, Plaintiff's employment would not have been terminated by the Defendant.

**ANSWER NO. 23:** Defendant denies the allegations as stated in this Paragraph of the Complaint.

24. Moreover, the Defendant intentionally terminated Plaintiff's employment in retaliation for Plaintiff having complained of race discrimination.

**ANSWER NO. 24:** Defendant denies the allegations as stated in this Paragraph of the Complaint.

25. The aforesaid material adverse actions followed Plaintiff's protected activity within such a short period of time as to raise an inference of retaliatory motivation.

**ANSWER NO. 25:** Defendant denies the allegations as stated in this Paragraph of the Complaint.

26. Defendant issued to Plaintiff the PIP and terminated Plaintiff's employment under circumstances where similarly situated individuals who had not complained of discrimination: were not issued PIP's; did not have their employment terminated; and were not even disciplined.

**ANSWER NO. 26:** Defendant denies the allegations as stated in this paragraph of the Complaint.

27. Following the Defendant's termination of Plaintiff's employment Plaintiff applied for, and was granted, unemployment compensation benefits.

**ANSWER NO. 27:** Defendant admits the allegations as stated in this Paragraph of the Complaint.

28. Defendant McDonald's Corp.'s conduct toward Plaintiff was intended to and did constitute retaliation. To have treated such a hardworking and productive black employee in

such an adverse and hostile manner sends a terrible message as to the type of company that McDonald's Corp. is in the Chicago area and in Illinois.

**ANSWER NO. 28:** Defendant denies the allegations as stated in this Paragraph of the Complaint.

29. Based on the foregoing, and more, Plaintiff charges Defendant McDonald's Corp. with unlawful retaliation, relating to Plaintiff's employment and the terms and conditions of Plaintiff's employment, in retaliation for Plaintiff's complaints of race discrimination and Plaintiff's asserting Plaintiff's rights under Title VII.

**ANSWER NO. 29:** Defendant admits the allegations as stated in this Paragraph of the Complaint but denies that it retaliated against Plaintiff or otherwise violated Plaintiff's legal rights.

## AS AND FOR A FIRST CAUSE OF ACTION

(Title VII – retaliation)

30. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

**ANSWER NO. 30:** Defendant repeats and restates its answers as set forth above as though fully set forth herein.

31. Upon information and belief, Defendant McDonald's Corp. has intentionally retaliated against Plaintiff due to Plaintiff's complaints of race discrimination, in the terms and conditions of her employment, in the termination of her employment, and otherwise, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-e et seq., as amended by, inter alia, the Civil Rights Act of 1991.

**ANSWER NO. 31:** Defendant denies the allegations as stated in this Paragraph of the Complaint.

32. By reason of the Defendant's retaliation against Plaintiff, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain and mental anguish, all to her damage.

**ANSWER NO. 32:**    Defendant denies the allegations as stated in this Paragraph of the Complaint.

**33.**    Further, said actions on the part of the Defendant were done with malice and reckless disregard for Plaintiff's protected rights, giving rise to punitive damages.

**ANSWER NO. 33:**    Defendant denies the allegations as stated in this Paragraph of the Complaint.

Respectfully Submitted,

McDONALD'S CORPORATION


By:  /s/Nigel F. Telman
        One of Its attorneys


Nigel F. Telman
Marianne Congdon-Hohman
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
(312) 853-7000

Dated:  January 18, 2008

## CERTIFICATE OF SERVICE

I, Nigel F. Telman, one of the attorneys for Defendant McDonald's Corporation, certify that I caused a copy of the foregoing McDonald's Corporation's Answer to Plaintiff's Complaint to be served upon Plaintiff's counsel, identified below, via the Court's electronic filing system on this 18th day of January 2008.:

>David Porter, Esq.
>11 S. LaSalle Street, Suite 1000
>Chicago, Illinois 60603

>>s/Nigel F. Telman
>>Nigel F. Telman