UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CAROL RODGERS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| -against- ) | |
| ) | |
| **McDONALD'S CORPORATION,** ) | |
| ) | |
| Defendant. ) | Jury Trial Demanded |

Plaintiff, by her attorney, David Porter, Esq., complaining of the Defendant, alleges as follows:

## JURISDICTION AND VENUE

1.  This is a civil action seeking monetary damages and affirmative relief based upon the Defendant's violation of Title VII of the Civil Rights Act of 1964, as amended by, inter alia, the Civil Rights Act of 1991, for the Defendant's retaliation against Plaintiff for Plaintiff's complaints of race discrimination and her asserting her rights under Title VII.

2.  Jurisdiction of this Court over this controversy is invoked under 28 U.S.C. Section 1331 and 28 U.S.C. Sections 1343 (3) and (4).

3.  Venue is proper pursuant to 28 U.S.C. Section 1391.

4.  All conditions precedent to commencing this action have been satisfied in that: a. Plaintiff has filed charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about August 16, 2006 (21-BA-62419 and 21-BA-62421); b. the EEOC has issued a Right to Sue Letter, dated August 10, 2007; and c. less than ninety (90) days have elapsed since Plaintiff received the Right-to-Sue Letter and filed this Complaint.

1

## PARTIES

5. Plaintiff, at all times hereinafter mentioned was and still is a resident and domiciliary of the County of DuPage, State of Illinois, specifically residing at 1728 Brookdale Road, Naperville, Illinois 60563.

6. Upon information and belief, Defendant McDonald's Corporation is a corporation doing business in the state of Illinois, and is engaged in an industry affecting commerce. Defendant has employed twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Defendant is an "employer" within the meaning of Title VII. Defendant's principle place of business is located in the County of DuPage at 2915 Jorie Blvd., Oak Brook, Illinois 60523.

## BACKGROUND

7. Plaintiff's race is Black.

8. Plaintiff worked at Defendant, McDonald's Corporation ("McDonald's Corp."), for almost five (5) years in the position of Administrative Coordinator: from November, 2001 to February, 2004 as a temp; and from March 1, 2004 to August 8, 2006. At the time McDonald's Corp. terminated Plaintiff's employment Plaintiff held the position of Administrative Coordinator.

9. On Thursday August 3, 2006 Plaintiff complained of race discrimination in connection with having been passed over for advancement opportunities. Three (3) workdays

later, on Tuesday August 8, 2006, Defendant suddenly terminated Plaintiff's employment.  This is discussed in greater detail below.

10.  During Plaintiff's employment with McDonald's Corp. Plaintiff had good to excellent work performance, with Plaintiff being a hard worker who was well-liked by her co-workers as well as by her superiors (including also by Kenneth Barun, the President of McDonald's Corp.), and also in this regards:

    a.    in or about late January, 2006 Defendant had conducted a round-table evaluation, as a result of which Plaintiff received the highest raise and highest bonus amongst the 3 administrative staff in her department;

    b.    in or about January, 2006 Plaintiff was rated a "significant contributor";

    c.    in or about March, 2006 Plaintiff received a 5% raise and 100% of Plaintiff's target bonus;  and

    d.    on or about June 27, 2006  -  1-½ months before Plaintiff's employment was terminated  -  Defendant issued Plaintiff a favorable mid-year performance review.

11.  In or about February, 2006 Plaintiff informed Janet Burton (Senior Director, and Plaintiff's Supervisor), that Plaintiff was interested in advancement, and specifically that Plaintiff was interested in the available Field Relations Manager position, that was vacant.  Ms. Burton (white) advised Plaintiff that she would not consider Plaintiff for that position, allegedly because she wanted someone who could hit the ground running.

12.  On or about March 28, 2006 Plaintiff again advised Ms. Burton that she wanted to seek advancement opportunities.  Plaintiff did this because Defendant's rules required that

Plaintiff notify Plaintiff's supervisor of this before Plaintiff was to be interviewed for a posted position.

    13.  From in or about February, 2006 Ms. Burton:

        a.    treated Plaintiff with hostility and made Plaintiff feel ostracized by Plaintiff's team;

        b.    gave Plaintiff extra work and work of the other administrative coordinators, and of managers towards attempting to overwhelm Plaintiff so that Plaintiff could fail;

        c.    withheld Plaintiff's evaluation past the due date, with her negatively changing the verbiage;

        d.    from March, 2006 excluded Plaintiff from staff meetings;  and

        e.    gave Plaintiff menial tasks to do, with Plaintiff not being allowed to take the lead in Plaintiff's job, and with Plaintiff being treated like Plaintiff was not intelligent.

    14.  On or about June 7, 2006 Plaintiff applied for the Administrative Coordinator position that was available at Defendant's Memphis, TN location.  Buffy Bye (white), Administrative Manager, advised Plaintiff that Plaintiff was the only internal applicant, and that she was very interested in interviewing Plaintiff for the position.  Ms. Bye interviewed Plaintiff via telephone and advised Plaintiff that she was going to check Plaintiff's references and get back to Plaintiff.

    15.  On or about June 28, 2006 Ms. Bye informed Plaintiff that Plaintiff was not chosen for the Administrative Coordinator position in Memphis, TN.  During Plaintiff's employment it was Plaintiff's belief that Defendant had hired a non-black, less qualified, applicant for this position.

16. On or about June 27, 2006 Plaintiff applied for the Regional Administrative Manager position that was available at Defendant's Raleigh, NC location. On July 12, 2007 Plaintiff interviewed with Kenneth Ricker (white, Defendant's Human Resource Manager, East Division), Marty Rantt (white, General Manager), and Julie Beichler (white, outgoing Administrative Manager).

17. On or about July 7, 2006 Defendant interviewed Plaintiff in North Carolina. On or about July 23, 2006 Defendant advised Plaintiff that Defendant had not selected Plaintiff and had instead selected someone else. Defendant promoted an internal candidate, who was non-black and less qualified than Plaintiff for the position.

18. On August 2, 2006 Plaintiff sent an e-mail to Janet Burton (Senior Director), Marty Coyne (Vice-President) and Angelique Kelly-Lara (HR Director) requesting a meeting to discuss why Plaintiff was not receiving any of the advancement opportunity positions Plaintiff had applied for. Later that day the requested meeting was scheduled for Friday August 4th at 9:30 a.m.

19. On August 3, 2006, Plaintiff engaged in a protected activity when Plaintiff complained to Pat Harris, Chief Diversity Officer, that Plaintiff was being held back from promotions because of Plaintiff's race, black. As Plaintiff and Ms. Harris finished the meeting Ms. Harris told Plaintiff that she was going to speak with HR Director Kelly-Lara right away about this, and Plaintiff then saw Ms. Harris walk in the direction of the HR Department.

20. Later that day, on August 3, 2006, Marty Coyne came to Plaintiff's desk and asked to speak with Plaintiff. Mr. Coyne and Plaintiff went into an empty conference room and Mr. Coyne stated that he had received Plaintiff's August 2nd e-mail requesting a meeting, and that the meeting had been rescheduled from the morning of Friday (August 4th) to the following Tuesday (August 8th) at 4:00 p.m. He also made a statement that led Plaintiff to conclude that he was aware of Plaintiff's aforesaid August 3rd conversation with Ms. Harris.

21. On August 8, 2006 Janet Burton came to Plaintiff's desk around 2:00 p.m. and requested that Plaintiff meet early with the group. Plaintiff responded sure, and Ms. Burton and Plaintiff walked together to the conference room. Angelique Kelly-Lara was waiting in the room to meet with Ms. Burton and Plaintiff, but Marty Coyne was not. When Plaintiff sat down Ms. Burton stated to Plaintiff that she knew Plaintiff was expecting a different meeting, but they wanted to meet with Plaintiff regarding Plaintiff's performance instead. Ms. Burton then advised Plaintiff that they were placing Plaintiff on a performance improvement plan ("PIP"), and she started to read the contents of the plan (which document was irregular). During this meeting Plaintiff stated that what Ms. Burton was saying as to Plaintiff's performance was not true, and Plaintiff advised that Plaintiff would not sign the PIP. Ms. Burton then responded that Plaintiff was terminated, and that Plaintiff should go clean out Plaintiff's desk. Ms. Burton then noted on the PIP that Plaintiff had refused to sign it.

22. Defendant had not issued Plaintiff any written warnings in the period April, 2005 to August 7, 2006.

23. The Defendant's issuance to Plaintiff of the PIP, as well as the timing of the Defendant's issuance of the PIP, was unwarranted and was retaliatory against Plaintiff for Plaintiff's aforesaid protected activity of complaining of race discrimination. But for such retaliatory action by the Defendant, Plaintiff's employment would not have been terminated by the Defendant.

24. Moreover, the Defendant intentionally terminated Plaintiff's employment in retaliation for Plaintiff having complained of race discrimination.

25. The aforesaid material adverse actions followed Plaintiff's protected activity within such a short period of time as to raise an inference of retaliatory motivation.

26. Defendant issued to Plaintiff the PIP and terminated Plaintiff's employment under circumstances where similarly situated individuals who had not complained of discrimination: were not issued PIP's; did not have their employment terminated; and were not even disciplined.

27. Following the Defendant's termination of Plaintiff's employment Plaintiff applied for, and was granted, unemployment compensation benefits.

28. Defendant McDonald's Corp.'s conduct toward Plaintiff was intended to and did constitute retaliation. To have treated such a hardworking and productive black employee in such an adverse and hostile manner sends a terrible message as to the type of company that McDonald's Corp. is in the Chicago area and in Illinois.

29. Based on the foregoing, and more, Plaintiff charges Defendant McDonald's Corp. with unlawful retaliation, relating to Plaintiff's employment and the terms and conditions of Plaintiff's employment, in retaliation for Plaintiff's complaints of race discrimination and Plaintiff's asserting Plaintiff's rights under Title VII.

## AS AND FOR A FIRST CAUSE OF ACTION

(Title VII - retaliation)

30. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

31. Upon information and belief, Defendant McDonald's Corp. has intentionally retaliated against Plaintiff due to Plaintiff's complaints of race discrimination, in the terms and conditions of her employment, in the termination of her employment, and otherwise, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-e et seq., as amended by, inter alia, the Civil Rights Act of 1991.

32. By reason of the Defendant's retaliation against Plaintiff, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain and mental anguish, all to her damage.

33. Further, said actions on the part of the Defendant were done with malice and reckless disregard for Plaintiff's protected rights, giving rise to punitive damages.

WHEREFORE, Plaintiff demands that:

a. Plaintiff's employment with Defendant be reinstated;

b. Plaintiff's employment record with Defendant be purged of all adverse documents which were placed in her file due to violations of Title VII;

c. Defendant be permanently enjoined from discriminating against Plaintiff on any basis forbidden by Title VII;

d. Defendant be Ordered to compensate, reimburse and make whole the Plaintiff for all the income and benefits Plaintiff would have received had it not been for the Defendant's illegal actions, including, but not limited to backpay, frontpay, and benefits;

e. Pursuant to Plaintiff's First cause of action, that Defendant be Ordered to compensate, reimburse and make whole the Plaintiff for Plaintiff's compensatory damages in an amount to be determined at trial;

f. Pursuant to Plaintiff's First cause of action, that Defendant be Ordered to compensate, reimburse and make whole the Plaintiff for Plaintiff's punitive damages in an amount to be determined at trial;

g. Defendant be Ordered to pay Plaintiff prejudgment interest;

h. Defendant be Ordered to pay the costs and disbursements of this action, including reasonable attorney fees pursuant to Title VII;  and

i. for such other and further relief as may be just and proper.

Plaintiff demands a jury trial on the matters complained of herein.

Dated:  November 5, 2007

           Respectfully submitted,

           By:_____
             David Porter

DAVID PORTER, ESQ.
Attorney for Plaintiff
11 S. LaSalle Street   -   Suite 1000
Chicago, Illinois 60603
(312) 236-1207