UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 cv 6262 |
| | ) | |
| v. | ) | Judge Milton Shadur |
| | ) | Mag. Judge Michael Mason |
| McDONALD'S CORPORATION, | ) | |
| | ) | Jury Trial Demanded |
| Defendant. | ) | |

**McDONALD'S CORPORATION'S RESPONSE
TO PLAINTIFF'S MOTIONS TO COMPEL**

I.  **Introduction**

Plaintiff Carol Rodgers' ("Rodgers'") Motions to Compel would have this Court believe that Defendant McDonald's Corporation ("McDonald's") has altogether refused to provide any documents or information in response to her document requests and interrogatories. Indeed, Plaintiff's Motion to Compel Production of Documents appears to assert that McDonald's has refused to respond to 32 out of a total of 61 production requests (including subparts). However, nothing could be further from the truth. McDonald's has in fact produced documents responsive to 15 of the 32 production requests that Plaintiff cites in her motion as examples of McDonald's failure to comply with discovery. Defendant also informed Plaintiff that no documents exist with respect to another three of these 32 requests. In total, <u>McDonald's has provided substantive responses to 43 out of a total of 61 production requests propounded by Plaintiff, and produced to Plaintiff over 1600 pages of responsive documents</u>, exclusive of documents provided to Plaintiff as part of McDonald's initial disclosures.

In addition, McDonald's has answered all of the interrogatories at issue in Plaintiff's Motion to Compel Production of Interrogatory Responses, offering objections only where appropriate and discussing with Plaintiff's counsel the basis for such objections both before and after serving its responses. To the extent McDonald's has objected to particular interrogatories and not offered substantive responses in whole or in part, McDonald's has done

so either because the interrogatory seeks information wholly unrelated to Plaintiff's sole cause of action or because Plaintiff is demanding that the answer include a level of detail (including a transcript or very specific testimony of what was said by certain individuals at specific meetings that convened nearly 2 years ago) that is more appropriately the subject of a deposition.

At the center of this discovery dispute between the parties is whether the scope of certain of Plaintiff's discovery requests are inconsistent with the scope of the sole cause of action asserted in Plaintiff's complaint -- Retaliatory Discharge. Essentially, Plaintiff asserts that she was first placed on a Performance Improvement Plan ("PIP") and then terminated during a meeting with her supervisor that occurred on August 8, 2006.[1] (See Complaint ("Complt.") ¶ 21). Plaintiff alleges that the Company terminated her employment because:

> 19. On August 3, 2006, Plaintiff engaged in a protected activity when Plaintiff complained to Pat Harris, Chief Diversity Officer, that Plaintiff was being held back from promotions because of Plaintiff's race, black.

(Complt. ¶ 19). Plaintiff further asserts that,

> 23. The Defendant's issuance to Plaintiff of the PIP, as well as the timing of Defendant's issuance of the PIP, was unwarranted and retaliatory against Plaintiff for Plaintiff's aforesaid protected activity of complaining about race discrimination. But for such retaliatory action by the Defendant, Plaintiff's employment would not have been terminated by the Defendant[; and]
>
> 24. Moreover, the Defendant intentionally terminated Plaintiff's employment in retaliation for Plaintiff having complained of race discrimination.

(Complt. ¶¶ 23-24). These allegations form the basis of Plaintiff's Retaliatory Discharge claim. Plaintiff has not alleged a separate cause of action for discrimination in her federal court complaint, notwithstanding the fact that she clearly asserted such a claim in the Charge she filed with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission.

Counsel for McDonald's and counsel for Plaintiff have met and conferred on a number of occasions, including during their initial "meet and confer", regarding the scope of Plaintiff's cause of action as asserted in her complaint and her apparent decision to limit her Complaint to Retaliatory Discharge and not assert a disparate treatment discrimination claim.

---

[1] McDonald's has made clear in its answers to Plaintiff's interrogatories that Plaintiff resigned her employment at the conclusion of the August 8, 2008 meeting.

Throughout this litigation, McDonald's has remained steadfast in its position that, by intentionally choosing not to assert a disparate treatment discrimination claim, Plaintiff is limiting her case (and any available damages) to her claim for Retaliatory Discharge.

McDonald's responses to Plaintiff's discovery are appropriately consistent with the scope of the cause of action as asserted in Plaintiff's Complaint. Beyond this, counsel for McDonald's has been responsive to Plaintiff's discovery requests, having provided Plaintiff with initial and, where appropriate, supplemental discovery responses, and has worked cooperatively with Plaintiff's counsel throughout this litigation.

II.     **Plaintiff Is Only Entitled To Obtain Discovery Regarding Her Claim For Retaliation, Which Is The Sole Cause Of Action Pled In Her Complaint.**

Plaintiff has clearly and consistently stated that the sole claim at issue in this lawsuit is for alleged unlawful retaliation, and not for discrimination. Indeed, Plaintiff asserts in the opening paragraph of her complaint that "[t]his is a civil action seeking . . . damages . . . for the Defendant's retaliation against Plaintiff. . . ." (Complt. ¶ 1). The sole "cause of action" that Plaintiff identified in the complaint is for "retaliation" under Title VII. *See* Complt. at p. 8 (providing, "And As For A First Cause of Action: Title VII – Retaliation"). Plaintiff further confirms that this lawsuit is limited to retaliation when she writes, in each of her motions to compel, that:

> [t]his is a Title VII retaliation case in which Plaintiff Rodgers has alleged . . . that:
>
> Defendant McDonald's Corp. has intentionally retaliated against Plaintiff due to Plaintiff's complaints of race discrimination, in the terms and conditions of her employment, in the termination of her employment, and otherwise . . . .

Pl. Mtn. to Compel Doc. Production (Docket No. 16), ¶ 1; Pl. Mtn. to Compel Interrogatory Resp. (Docket No. 18), ¶ 2.

In the Seventh Circuit, a plaintiff without any direct evidence of retaliation must present evidence in accordance with the following scheme by showing:

> . . . that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If

3

>the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

*Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002). Thus, to establish a claim for retaliation, a plaintiff must present sufficient evidence to establish that (i) she engaged in protected conduct; (ii) after engaging in such protected conduct, she was subjected to an adverse employment action; (iii) no similarly situated employee who did not engage in protected conduct was subjected to an adverse employment action; and (iv) she was performing her job in a satisfactory manner. To the extent Plaintiff seeks to compel the production of documents or information that do not relate to the foregoing elements of proof or that are not reasonably likely to lead to the discovery of admissible evidence, McDonald's should not be required to produce such documents and/or information.

III.    **Plaintiff Is Not Entitled To Discovery That Is Unrelated To Her Cause Of Action.**

Federal discovery rules do not entitle a plaintiff alleging retaliatory discharge to embark on a fishing expedition, demanding documents and information that are both wholly unrelated to the elements of proof applicable to a plaintiff's claim and reasonably unlikely to lead to the discovery of admissible evidence regarding the facts at issue in the complaint as pled. Without such reasonable constraints, parties to a lawsuit would have unfettered access to each other's records. That is why Rule 26 of the Federal Rules of Civil Procedure confines discovery to the claims and defenses that are asserted in the pleadings. "Discovery should be specifically molded to the particular issues of the case." *Johnson v. Jung*, Nos. 02 C 5221, 04 C 6158, 2007 WL 1752608, at *1 (June 14, 2007). Thus, for example, "if a plaintiff alleges a discrimination suit, a retaliation claim is not necessarily within the scope of discovery." *Castillo v. Norton*, 219 F.R.D. 155, 160 n.2 (D. Ariz. 2003); *see also Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 58 (D.N.J. 1985) (where a female plaintiff brought a lawsuit alleging only age and race discrimination, her interrogatories regarding sex discrimination were irrelevant and did not need to be answered by defendant). Plaintiff cites no authority to support a contrary conclusion.

Plaintiff's one-count complaint alleges only retaliation and <u>not</u> discrimination. As such, Plaintiff's discovery requests that would be relevant within the context of a disparate impact discrimination claim—including, without limitation, requests seeking information

4

concerning (i) the employment history of Plaintiff's supervisor (*see* Pl. Mtn. to Compel Doc. Production, (Docket No. 16), ¶ 10, at Nos. 21-23, 25-26), (ii) the identity of individuals who filled Plaintiff's position following her termination (*see id.* at No. 44); and (iii) the position descriptions for a number of McDonald's employees (*see id.* at Nos. 45-52)—not only have no relevance to the elements of her retaliation claim or McDonald's defenses thereto but are clearly unlikely to lead to the discovery of admissible evidence. Plaintiff has failed altogether to provide this Court with any authority or rationale explaining how or why the requested documents and information are relevant to her retaliation claim.[2]

IV. **McDonald's Has Fully Complied With Its Discovery Obligations.**

Plaintiff's Motion to Compel asserts that McDonald's' unjustifiably failed to respond to Document Request Nos. 8-11, 14-16, 21-23, 25-26, 28-29, 31, 44-45, 47-52, and 54. Contrary to Plaintiff's assertion, however, McDonald's has in fact provided written responses and produced documents responsive to 15 of the 32 requests (including subparts) at issue in Plaintiff's Motion To Compel The Production Of Documents. Moreover, McDonald's has informed Plaintiff that it does not possess any non-privileged documents that are responsive to an additional three (of the 32) requests. McDonald's objected to the remaining 14 production requests (out of 61 total, including subparts) on the ground that they are not relevant to Plaintiff's retaliation claim and not likely to lead to the discovery of admissible evidence.

1. <u>Production Requests That Plaintiff In Her Motion *Erroneously* Claims McDonald's Failed to Answer</u>.

    - **Document Request Nos. 8-10.** These requests seek documents related to the PIP given to Rodgers on August 8, 2006. McDonald's has produced documents in its possession that are responsive to these requests. Such documents are bates-numbered

---

[2] In her Motion to Compel Production of Documents, Plaintiff argues that one of the issues relevant to the adjudication of her retaliation claim is "[w]hether Plaintiff Rodgers had a reasonable belief that she was being racially discriminated against." Pl. Mtn. to Compel Doc. Production, (Docket No. 16), ¶ 8. A plaintiff's state of mind, however, has absolutely nothing to do with proving a cause of action for retaliation. *See, e.g., Stone*, 281 F.3d at 644. Plaintiff's "state of mind" argument presented to justify her overbroad discovery requests is without merit and unsupported by any legal authority.

5

MCD 0004, 0005, 0040-41, 427-679 (Request No. 8) and MCD 539, 541-43 (Request Nos. 9-10)).

- **Document Request No. 14:** The protected activity allegedly giving rise to Plaintiff's retaliation claim is Plaintiff's complaint to Pat Harris on August 3, 2006, that she was being denied promotions because of her race. (*See* Complaint ¶ 19). Assuming that Plaintiff's complaint to Ms. Harris was a protected activity, then the sole issue left to be determined is whether Plaintiff suffered an adverse employment action *as a result* of her August 3 complaint to Ms. Harris. Accordingly, the documents sought in Request No. 14 -- i.e., documents concerning any other communications Plaintiff may have had with Pat Harris -- are irrelevant to the extent they are unrelated to her complaint of being treated unfairly because of her race. Furthermore, McDonald's has stated that other than its IDHR Position Statement, it has no additional responsive documents in its possession and/or control.

- **Document Request Nos. 15-16.** These requests relate to *any* internal complaints made by Plaintiff and *any* investigation by McDonald's regarding said complaints. Plaintiff's internal complaints are irrelevant to the extent that they predate and are unrelated to her complaint to Pat Harris on August 3, 2006, which Plaintiff alleges was the basis for the alleged retaliatory acts at issue in this lawsuit. Similarly, McDonald's investigation of any of Plaintiff's internal complaints would not be relevant to any elements of her retaliation claim or to McDonald's defenses thereto. Accordingly, and subject to its objections to the relevancy of these requests, McDonald's produced documents in response to Request No. 15 (MCD 21-23) and informed Plaintiff that no additional documents exist that are responsive to Request No. 16.

- **Document Request Nos. 28-29.** These requests seek documents concerning any instances where McDonald's terminated similarly situated employees under circumstance similar to those that led to the termination of Plaintiff's employment. However, Plaintiff's attempt to compel the production of these documents is moot because, as McDonald's has previously informed Plaintiff (*see* Def. Supp. Resp. to

6

Pltf. Doc. Requests (Docket No. 16-3), Nos. 28-29), it does not possess any documents that are responsive to these requests.

- **Document Request No. 31.** This request seeks documents concerning any investigation by McDonald's into Plaintiff's claims that she had been subjected to discrimination by Ms. Burton. While such documents might have been relevant had Plaintiff asserted a claim for unlawful *discrimination* or *harassment* (whereby any such complaint may have triggered a duty on the part of McDonald's to investigate and respond accordingly), they have no relevance to the issue of whether McDonald's retaliated against Plaintiff for her complaints to Ms. Harris on August 3. In any event, McDonald's has produced documents responsive to this request. (*See* Def. Supp. Resp. to Pltf. Doc. Requests (Docket No. 16-3), No. 31, at p. 19 (reflecting that McDonald's has produced documents bates-numbered MCD 21-23)).

2. Production Requests To Which McDonald's Asserts Appropriate Objections.

- **Document Request No. 11.** This request seeks documents pertaining to positions Plaintiff applied for in 2005 and 2006. While the documents sought might have been relevant had Plaintiff brought a claim alleging *discrimination* by way of a failure to hire or promote, it is in no way relevant to Plaintiff's sole claim for Retaliatory Discharge. Plaintiff was not denied any positions (and thus was not adversely harmed in her employment) after she complained of discrimination on August 3, 2006, and to the extent she was denied any opportunity to transfer/promote to any positions prior to August 3, 2006, such denials could not have been retaliatory in nature because they preceded the date (August 3) when she complained of race-based discrimination.[3]

- **Document Request Nos. 21-23, 25-26.** These requests seek documents concerning any complaints that employees previously levied against Plaintiff's supervisor, Janet Burton (Nos. 21-23), and concerning Ms. Burton's employment history (Nos. 25-26). While such documents might have been relevant had Plaintiff alleged a *pattern and*

---

[3] Defendant notes (and pointed out to Plaintiff's counsel) that the IDHR Position Statement submitted by McDonald's fully explained the Company's reasons for not offering to transfer or promote Plaintiff to these positions, as that issue was a central part of Plaintiff's IDHR Charge. McDonald's provided a copy of its IDHR Position Statement to Plaintiff as part of its initial disclosures.

7

*practice* of *discrimination*, they simply have no bearing on the issue of whether McDonald's subjected Plaintiff to an adverse employment action because she had lodged certain complaints to Ms. Harris on August 3. Without waiving any of its objections to these requests on relevancy or other grounds, McDonald's has produced certain documents in response to Request Nos. 22-23. *See* Def. Supp. Resp. to Pltf. Doc. Requests (Docket No. 16-3), at pp. 15-16 (reflecting that McDonald's has produced documents bates-numbered MCD 21-23). Any additional documents beyond what has already been produced in this matter are irrelevant to the claims as pled, unduly burdensome to Defendant, and not likely to lead to the discovery of admissible evidence.

- **Document Request No. 44.** This request seeks documents concerning the manner in which Plaintiff's position was filled following her termination. While such documents may have been relevant had Plaintiff brought a claim for *discrimination* alleging she was terminated because of her race (or other protected characteristic), they are not relevant to the issue of whether McDonald's subjected Plaintiff to an adverse employment action because of her complaints of discrimination. The documents sought in this request are irrelevant to the claims as pled, unduly burdensome to Defendant, and not likely to lead to the discovery of admissible evidence.

- **Document Request No. 45-52.** These requests seek various job descriptions that simply are not relevant to Plaintiff's retaliation claim, and Plaintiff has provided no explanation as to why or how such documents relate to any of the claims or defenses at issue. The documents sought in this request are irrelevant to the claims as pled, unduly burdensome to Defendant, and not likely to lead to the discovery of admissible evidence.

- **Document Request No. 54 (including subparts).** To the extent that this request seeks documents that are relevant to Plaintiff's retaliation claim, McDonald's has produced all documents in its possession that are responsive to the request. (*See* Def. Supp. Resp. to Pltf. Doc. Requests (Docket No. 16-3), No. 54, at pp. 28-29 (reflecting that McDonald's has produced documents bates-numbered MCD 876-1094 and 1347-

8

1386 in response to this request)). However, for the reasons discussed above, to the extent that this request seeks documents that relate to employee applications for other positions (No. 54, subparts (c) and (d)) and/or the job description of McDonald's Chief Diversity Officer (No. 54, subpart (f)), such documents are not relevant to the claims or defenses at issue in Plaintiff's retaliation claim. Any additional documents beyond what has already been produced in this matter are irrelevant to the claims as pled, unduly burdensome, and not likely to lead to the discovery of admissible evidence.

McDonald's has produced to Plaintiff all documents responsive to those of her document requests that are in any way relevant or reasonably likely to lead to the discovery of admissible evidence regarding her claim for retaliation. To the extent McDonald's did not produce certain documents, it did not do so because such documents either did not exist (in which case, McDonald's informed Plaintiff of that fact) or because the request was wholly unrelated to Plaintiff's retaliation claim. Accordingly, Plaintiff's motion to compel the production of additional documents should be denied.

V.   **Defendants Have Provided All Reasonably Discoverable Information Responsive To The Interrogatories At Issue In Plaintiff's Motion To Compel.**

On pages 4-9 of her Motion to Compel the Production of Interrogatory Responses, Plaintiff identifies Interrogatory Nos. 2, 4, 9, 10, and 12 as the specific interrogatories that she claims McDonald's unreasonably refused to answer. As explained below, however, McDonald's has fully answered each of these requests to the extent they seek information relevant to Plaintiff's retaliation claim and/or McDonald's defenses thereto:

- **Interrogatory No. 2.** Counsel for McDonald's has fully answered this Interrogatory and has gone to great lengths to explain its answer to Plaintiff, including by submitting initial and supplementary answers to this Interrogatory, and then by sending a follow-up email further explaining its answer thereto. *See* Def. Supp. Resp. to Pltf. Interrogs. (Docket No. 18-2), at No. 2; *see also* Letter of N. Telman dated July 11, 2008 (Docket No. 18-7), at 1. In her Motion to Compel, Plaintiff states that she wants to know whether Angelique Kelly-Lara or Janet Burton had heard that Plaintiff

9

had spoken with Pat Harris and, if so, Plaintiff wants to know who told what to whom. *See* Def. Ans. To Pltf. Interrogs. (Docket No. 18), ¶ 12. McDonald's has already provided this information.

<u>First</u>, McDonald's initial answer to Plaintiff's interrogatories provides that Ms. Harris told Mr. Barrun that she met with Rodgers but did not tell Barrun that Plaintiff complained about discrimination because of her race (since Rodgers never brought up race to Harris). *See* Def. Supp. Resp. to Pltf. Interrogs. (Docket No. 18-2), No. 2, at p. 3-4. <u>Second</u>, McDonald's supplemental response to Plaintiff's interrogatories made clear that (i) other than Barrun, Ms. Kelly-Lara was the *only* other person that Ms. Harris told about her meeting with Rodgers; (ii) Ms. Harris did not discuss with Kelly-Lara any of the contents of the meeting; and (iii) Ms. Burton recalls hearing from Barrun that Rodgers met with Harris but was not told about the contents. *Id.*, at 4. <u>Third</u>, the July 11 email from McDonald's counsel, Nigel Telman, to David Porter further clarifies that neither Kelly-Lara nor Burton recall hearing from anyone else about the content of the conversation between Rodgers and Harris. *See* Letter of N. Telman dated July 11, 2008 (Docket No. 18-7), at 1. In short, Ms. Harris only told Kelly-Lara and Barrun that she had met with Plaintiff. Barrun, in turn, told Ms. Burton of that fact that Plaintiff and Harris had met. Neither Ms. Burton nor Ms. Kelly-Lara heard about the meeting from anyone else. *See* Def. Supp. Resp. to Pltf. Interrogs. (Docket No. 18-2), No. 2, at p. 4.

McDonald's believes that its responses to Interrogatory No. 2 are wholly sufficient, and it is unaware of what else it can provide Plaintiff in response thereto. To the extent Plaintiff wants additional details, or wants to know the exact words used by the above individuals during the above discussions, such information is most appropriately obtained through a deposition.

- **Interrogatory No. 4.** This interrogatory requests information concerning any complaints that have been filed against Plaintiff's supervisor, Ms. Burton, by Plaintiff or by other employees. McDonald's provided substantial information in its initial and supplementary interrogatory answers concerning various complaints that Plaintiff herself made about Ms. Burton. *See* Def. Supp. Resp. to Pltf. Interrogs. (Docket No.

18-2), No. 4, at pp. 5-7. However, while Plaintiff's request for information concerning any complaints that *other* employees have previously levied against Ms. Burton (including, without limitation, information concerning McDonald's investigation in response to such complaints (No. 4, subpart (c)), or the extent to which Ms. Burton herself was disciplined (subpart (e))) might have been relevant had Plaintiff alleged *harassment* or a pattern and practice of *discrimination*, such general complaints by other employees are irrelevant and have no bearing on the issue of whether McDonald's retaliated against Plaintiff for her complaints to Ms. Harris on August 3.

Again, Plaintiff has failed to offer this Court any case law or even a rationale to establish the relevance of such employee complaints to her retaliation claim. Accordingly, McDonald's refuses to provide any information concerning any complaints about Ms. Burton made by employees other than Plaintiff.

- **Interrogatory Nos. 9-10.** Plaintiff seeks to learn through these interrogatories which individuals were involved in the decisions to place Plaintiff on a Performance Improvement Plan ("PIP") on January 25, 2005 and again on August 8, 2006. Plaintiff also seeks to learn the "specific involvement and suggestions" of each such individual. *See* Def. Supp. Resp. to Pltf. Interrogs. (Docket No. 18-2), at pp. 10-11. McDonald's has answered these interrogatories by providing Plaintiff with the names of the individuals involved in each of the decision(s) to place Plaintiff on the PIPs, as well as the date they met and the nature of their discussion with respect to each PIP (i.e., in each case the decision-makers discussed Plaintiff's performance deficiencies and ultimately agreed to place Plaintiff on a PIP). *Id.* To the extent Plaintiff wants McDonald's to "describe in detail" the "specific involvement and suggestions" of the above individuals, McDonald's maintains (as it has throughout discovery) that such information is more appropriately the subject of a deposition. *See* Def. Ans. To Pltf. Interrogs. (Docket No. 18), ¶ 16; *see also* Def. Supp. Resp. to Pltf. Interrogs. (Docket No. 18-2), at pp. 10-11. Indeed, such information is wholly irrelevant because it was *the Company's* decision to place Rodgers on a PIP. Each individual's personal opinion regarding the matter, even if it conflicted with the Company's decision, has no bearing on liability or damages of Plaintiff's retaliation claim. Accordingly, the

information sought in these requests are irrelevant to the claims as pled, unduly burdensome to prepare, and not likely to lead to the discovery of admissible evidence.

- **Interrogatory No. 12.** In response to this interrogatory, which requests the addresses and phone numbers for 25 individuals, McDonald's maintains the objection (made in its initial answer to this interrogatory) that any contact with McDonald's "control group" should be through counsel for the Company. *See* Def. Supp. Resp. to Pltf. Interrogs. (Docket No. 18-2), at pp. 11-12. With respect to the individuals outside the control group, counsel for McDonald's informed counsel for Plaintiff that he is willing to seek the permission of these individuals to disclose their contact information upon explanation of what specific relevant information each of the listed individuals may have. To date, Mr. Porter has not explained what relevant information these individuals may have regarding the case.

In conclusion, McDonald's has fully answered the five interrogatories for which Plaintiff now seeks to compel supplemental answers. To the extent that Plaintiff's Interrogatories either seek information that is not relevant to Plaintiff's retaliation claim or require the Company to provide specific statements made by specific individuals (i.e., where such information is best obtained through a deposition), McDonald's acted reasonably in objecting to such requests and in refusing to provide information in response to them.

WHEREFORE**,** Defendant McDonald's Corporation respectfully requests that the Court deny Plaintiff's Motion to Compel Production of Documents (Docket No. 16) and Motion to Compel Production of Supplementary Interrogatory Responses (Docket No. 18) in their entirety.

Date: July 30, 2008　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　McDONALD'S CORPORATION


　　　　　　　　　　　　　　　　　　　By: /s/Nigel F. Telman
　　　　　　　　　　　　　　　　　　　　　　One of Its attorneys


Nigel F. Telman
Brian P. Guarraci
Marianne Congdon-Hohman
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
(312) 853-7000

## CERTIFICATE OF SERVICE

I, Brian P. Guarraci, one of the attorneys for Defendant McDonald's Corporation, certify that I caused a copy of the foregoing to be served upon Plaintiff's counsel, identified below, via the Court's electronic filing system on this 30th day of July 2008:

>David Porter, Esq.
>11 S. LaSalle Street, Suite 1000
>Chicago, Illinois 60603

>s/ Brian P. Guarraci

CH1 4354799v.3